IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:06-CT-69-BO

| | |
|---|---|
| NELSON DELMAR FRIESON, )<br>Plaintiff, )<br>)<br>v. )<br>)<br>DETECTIVE STEVE GARDNER, et al., )<br>Defendants. ) | ORDER |

Nelson Delmar Frieson ("plaintiff"), an inmate, filed this action asserting a claim under 42 U.S.C. § 1983. His specific claims arise from his arrest on August 14, 2003, for the robbery of the First Citizens Bank in Wilson. He named Detective Steve Gardner, Detective Johnny Hendricks, Wilson Daily Times, District Attorney John Coualou, and Magistrate Mike Smith as defendants in the complaint. Magistrate Mike Smith, District Attorney John Coualou, and the Wilson Daily Times were dismissed by prior court order. Plaintiff has filed a motion to amend which includes one additional defendant, Judy Heeden. Defendants' Gardner and Hendricks have filed a motion for summary judgment to which plaintiff responded. The motions are ripe and properly before the court for determination.

FACTUAL FINDINGS

On August 11, 2003, the First Citizens Bank in Wilson, North Carolina, was robbed and an investigation ensued. During the investigation, Wilson Police Detectives Steve Garner and Johnny Hendricks obtained what they deemed credible evidence on information that Nelson Frieson committed the robbery. Individuals who knew Frieson provided the information. The detectives also learned where Frieson might be located. Thereafter, the detectives arrived at the

residence of Tina Terry and her children on 5600 Raccoon Court in Wilson, North Carolina. Sherman Terry, Tina's brother resided there as well. Tina Terry was pregnant with Frieson's child at the time, however, he was not the father of her other children.

When the detectives arrived, Tina Terry and Tina's brother, Sherman Terry, came out of the residence. The detectives explained that they were looking for Frieson. The detectives produced a photograph from bank surveillance of the robbery. Both Tina and Sherman Terry indicated that Nelson Frieson was the person in the photograph. Detective Hendricks asked the Terrys if Frieson was inside the residence to which Sherman Terry indicated that he was. Tina Terry gave the detectives permission to search the residence. Sherman Terry and detective Hendricks then entered the residence. Tina Terry took her children into the back room.

Detective Hendricks states that he drew his weapon and held it in a low ready position. Sherman Terry entered a bathroom, looked behind the shower curtain, and stepped back. Frieson was hiding in the tub. While plaintiff confirms that he was in the bathroom, he alleges that Hendricks barged into his home "waving a service weapon." Detective Hendricks did call for him to come out because he was not in a position to identify whether or not Frieson was armed. Thereafter, Frieson came out, Hendricks searched him for weapons, and handcuffed him. No other force was used and Frieson was cooperative. Detective Hendricks asked Frieson to go to the police station for questioning and Frieson consented. Tina and Sherman Terry were informed that further information would also be needed from them.

Detective Gardner transported Frieson to the Wilson police station where Gardner read Frieson his Miranda rights and interviewed him. Later, Tina Terry arrived at the police station and informed Detective Gardner that Sherman Terry could "alibi" Frieson. Dectective Gardner

2

left Frieson at the police station to seek an arrest warrant for Frieson. Detective Gardner presented the facts of the investigation to the Magistrate, including the alibi statement. The magistrate issued a warrant for Frieson's arrest for bank robbery. With the warrant, Detective Gardner returned to the police station and informed Frieson he was under arrest. Frieson was escorted to the Magistrate's office, and placed under a $100,000 bond for bank robbery, a $1,000 bond for an unrelated outstanding charge, and a $500 bond on a second unrelated outstanding charge. Both of the unrelated charges were for outstanding warrants discovered after Frieson arrival at the police station.

## ISSUES PRESENTED

Frieson appears to make three arguments: 1) the arrest and events leading up to his arrest traumatized he and his family; 2) the search of the residence and his resulting apprehension were illegal because it was a warrantless search done without permission; and 3) Frieson's arrest was illegal because he did not commit the crime.

## DISCUSSION

i.  Motion to Amend

On February 28, 2008, Hinton filed a motion to amend his complaint. A party is allowed to amend his complaint once as a matter of right before a responsive pleading is served. Fed. R. Civ. P. 15(a). Because the motion to amend was filed after a responsive pleading, the motion is not allowable as a matter of course, and "a party may amend its pleading only with the opposing party's written consent or the court's leave."[1] Fed. R. Civ. P. 15(a)(2). The rule mandates that leave to amend "be freely given when justice so requires." *Id.* This determination rests within

---

[1] No such consent has been provided by defendants in the motion.

the discretion of the trial court. *Zenith Radio Corp. v. Hazeltine Reseach, Inc.*, 401 U.S. 321, 330 (1971) (*citing Foman v. Davis*, 371 U.S. 178, 182 (1962) (dictum)); *Nilsen v. City of Moss Point, Miss.*, 621 F.2d 117, 122 (5th Cir. 1980). In exercising discretion to consider a motion to amend a complaint, among other factors, the court may consider undue delay, dilatory motive on the part of the movant, undue prejudice to the opposing party by virtue of allowing the amendment or futility. *See Foman*, 371 U.S. at 182; see *Wolfchild v. United States*, 77 Fed. Cl. 22, 31-32 (2007); *see also System Fuels, Inc. v. United States*, 73 Fed. Cl. 206, 210-211 (2006). An amendment is futile where it fails to state a claim for relief. *Daewoo Motor Am., Inc. v. General Motors Corp.*, 459 F.3d 1249, 1260-61 (11th Cir. 2006). Here, the motion is futile. Frieson seeks to add a party defendant, Judith Heeden, the victim bank teller at the First Citizens Bank. She is a private party, not a state actor acting under color of law, and is not amenable to suit under 42 U.S.C. § 1983. 42 U.S.C. § 1983; *American Manufacturers Mutual Ins. Co. v. Sullivan*, 526 U.S. 40 (1999); *Parratt v. Taylor*, 451 U.S. 527 (1981). The motion is dismissed as futile.

ii.  Motion for Summary Judgment

Summary judgment is appropriate when there exists no genuine issue of any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 247 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. *Id.* at 250. Furthermore, although the Court is required to draw any inferences from the underlying facts which are favorable to the nonmovant, inferences may be drawn only from facts for which the nonmovant offers Rule 56 proof (rather than mere allegations); and must be

reasonable in light of competing inferences to the contrary. *See Sylvia Development Corp. v. Calvert County*, 48 F.3d 810, 817-18 (4th Cir. 1995).

Defendants raise the defense of qualified immunity. Therefore, the court must first determine whether each defendant is entitled to qualified immunity. *DiMeglio v. Haines*, 45 F.3d 790, 797-98 (4th Cir. 1995); *see also, Saucier v. Katz*, 533 U.S. 194 (2001). Public officials discretionary duties are free from liability for monetary damages if they can prove their conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Bonner v. Anderson*, 81 F.3d 472, 475 (4th Cir. 1996).

a. Excessive Force

In the case at hand, the court shall assume Frieson to allege some type of excessive force in the search of the residence and his subsequent discovery and arrest when he says the events traumatized he and his family. Under the Supreme Court's ruling in *Graham v. Connor*, we must review Freison's excessive force claim under the Fourth Amendment and its "objective reasonableness" standard. 490 U.S. at 395 (holding that "*all* claims that law enforcement officers have used excessive force--deadly or not--in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard"). As the Court stated in *Graham*, "[d]etermining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Id.* (*quoting Tennessee v. Garner*, 471 U.S. 1, 8 (1985) (internal quotation marks omitted)). Because such a test does not

5

lend itself to a bright line rule, we must take into consideration the "totality of the circumstances" when assessing the reasonableness of force used by an officer. *Garner*, 471 U.S. at 8-9. In doing so, we view the totality of the circumstances "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. "The extent of the plaintiff's injury is also a relevant consideration." *Jones v. Buchanan*, 325 F.3d 520, 527 (4th Cir. 2003).

Plaintiff alleges that Detective Hendricks barged into his home "waving a service weapon" and arrested him at gun point. However, the facts are that the detectives arrived at Tina Terry's residence after investigation of a bank robbery. They had credible suspicion to believe both that Frieson was there and that he had committed the robbery of the First Citizens Bank. Sherman and Tina Terry identified Frieson as the person in the photograph from surveillance camera in the bank. Sherman Terry gave the detectives permission to enter and search the house. Detective Hendricks drew his service weapon because Frieson was hiding in a bathtub behind a shower curtain. Furthermore, Detective Hendricks had no way to establish if Frieson was armed. There is no evidence of any force in the handcuffing and the events did not cause any resulting injury. The court finds that the force used in the incident was objectively reasonable under the totality of the circumstances and the detectives are cloaked with qualified immunity.

b. Warrantless Search

"The Fourth Amendment recognizes a valid warrantless entry and search of premises when police obtain the voluntary consent of an occupant who shares, or is reasonably believed to share, authority over the area in common with a co-occupant who later objects to the use of

evidence so obtained. *Georgia v. Randolph*, 547 U.S. 103, 106 (2006) (*citing Illinois v. Rodriguez*, 497 U.S. 177 91990); *United States v. Matlock*, 415 U.S. 164 (1974)).

If Frieson is challenging the validity of the warrantless search, he has no claim. Tina Terry gave the detectives permission to search the residence and he was an occupant of the residence. Therefore, in light of the evidence there is no Fourth Amendment infringement of Frieson's constitutional rights and defendants are cloaked with qualified immunity.

c. Probable Cause

"The Fourth Amendment prohibits law enforcement officers from making unreasonable seizures, and seizure of an individual effected without probable cause is unreasonable." *Miller v. Prince George's County MD*, 475 F.3d 621, 627 (4th Cir. 2007) (*quoting Brooks v. City of Winston-Salem*, 85 F.3d 178, 183 (4th Cir. 1996)). While Frieson was arrested pursuant to a warrant, he appears to claim that the warrant was not supported by probable cause. A plaintiff's allegation that police seized him "pursuant to legal process that was not supported by probable cause and that the criminal proceedings terminated in his favor are sufficient to state a . . . claim alleging a seizure that was violative of the Fourth Amendment." *Miller*, 475 F.3d at 627 (*quoting Brooks*, 85 F.3d at 183-84).

In order to establish probable cause adequate to obtain issuance of an arrest warrant, an officer is only required to present enough evidence "'to warrant a man of reasonable caution in the belief that' an offense has been or is being committed." *Wilkes v. Young*, 28 F.3d 1362, 1365 (4th Cir. 1994) (*quoting Brinegar v. United States*, 338 U.S. 160, 175-76 (1949)). A reviewing court must look at the "totality of the circumstances" in determining whether there was probable cause, examining both the veracity and base of knowledge of those sources supplying hearsay

information. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). To establish some type of dishonest and therefore deficient warrant a plaintiff must prove an officer with deliberate or reckless disregard for the truth made material false statements in his warrant affidavit, *Franks v. Delaware*, 438 U.S. 154, 171 (1978), or omitted from that affidavit "material facts with the intent to make, or with reckless disregard of whether they thereby made the affidavit misleading." *United States v. Colkley*, 899 F.2d 297, 300 (4th Cir. 1990).

"Reckless disregard" can be established by evidence that an officer acted "with a high degree of awareness of [a statement's] probable falsity," that is, "when viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported." *Wilson v. Russo*, 212 F.3d 781, 788 (3d Cir.2000) (internal quotation marks omitted); see also *Forest v. Pawtucket Police Dept.*, 377 F.3d 52, 58 (1st Cir.2004); *United States v. Clapp*, 46 F.3d 795, 801 n. 6 (8th Cir.1995). As for omissions, "reckless disregard" can be established by evidence that a police officer "failed to inform the judicial officer of facts [he] knew would negate probable cause." *Beauchamp v. City of Noblesville, Inc.*, 320 F.3d 733, 743 (7th Cir.2003); see also *Wilson*, 212 F.3d at 788; *United States v. Jacobs*, 986 F.2d 1231, 1235 (8th Cir.1993). A plaintiff's "allegations of negligence or innocent mistake" by a police officer will not provide a basis for a constitutional violation. *Franks*, 438 U.S. at 171.

Here, an investigation was undertaken wherein several individuals identified Frieson as the robber and identified him from a surveillance camera photograph. In fact, Frieson's girlfriend and her brother corroborated the identification after viewing the photograph themselves. After interviewing Frieson, the detectives presented the evidence to the magistrate,

including the conflicting alibi evidence, and the warrant was issued. Frieson has failed to allege that the detectives had deliberate or reckless disregard for the information they investigated, gathered and presented to obtain the valid warrant. The arrest warrant was not defective based on probable cause. Lastly, the later dismissal of the charges does not in and of itself invalidate a prior validly issued arrest warrant. *See Chriss v. City of Kent*, 867 F.2d 259, 262 (6th Cir. 1988) (instructs that "[a] valid arrest based upon then-existing probable cause is not vitiated if the suspect is later found innocent") (citation omitted).

Accordingly, defendants' motion for summary judgment is GRANTED and the matter is DISMISSED. Plaintiff's motion to amend is DENIED as FUTILE. Having so found, all other pending motions are DENIED as MOOT. SO ORDERED, this __4__ day of August 2008.

_____
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE